Samuel D. ROBINSON, Plaintiff in error,

v.

STATE of Wisconsin, Defendant in error-Petitioner.

Supreme Court

*No. 79–646–CR. Argued April 1, 1981.—Decided June 15, 1981.*

(Also reported in 306 N.W.2d 668.)

For the petitioner the cause was argued by *Chris Heik-enen,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the plaintiff in error there was a brief and oral argument by *Jack E. Schairer,* senior assistant public defender.

HEFFERNAN, J.   This is a review of a decision of the court of appeals dated August 26, 1980,[1] which reversed judgments of the circuit court for Rock county convicting the defendant of armed robbery, in violation of sec. 943.-32(2), Stats., and concealing identity, in violation of sec. 946.62.  The defendant was sentenced to indeterminate terms of ten years on the conviction of armed robbery and two and one-half years on the conviction of concealing identity, the latter sentence to be consecutive to the armed robbery term.  The motion for a new trial was denied.  The appeal to the court of appeals was from the judgments and from the order denying retrial.

On that appeal, the only errors urged were that there was insufficient evidence to show that Robinson concealed his identity and that it was a denial of due process to permit the prosecutor to use prior inconsistent statements of witnesses as substantive evidence of guilt at trial.  The court of appeals, however, did not address the question of the sufficiency of the evidence; and, although it held (citing *Vogel v. State,* 96 Wis.2d 372, 291 N.W. 2d 838 (1980)) that it was not erroneous to use a prior inconsistent statement of a witness as substantive evidence, it resolved the appeal and reversed on the ground that Robinson's rights of confrontation were violated when the trial court permitted the use of the co-criminal

---

[1] Unpublished opinion, 98 Wis.2d 749, 297 N.W.2d 515 (Ct. App. 1980).

McClellan's statement to be admitted into evidence when McClellan, according to the court of appeals, had a total failure of memory and could not be cross-examined about the statement. It was on this latter ground, denial of the right of confrontation guaranteed by the sixth amendment, that the court of appeals reversed and remanded for a new trial.

On this review we conclude that Robinson's confrontation rights were not violated and, accordingly, reverse the court of appeals and affirm, with modification, the judgment of the trial court.

We also conclude the trial court erred in sentencing Robinson for concealing his identity by treating that offense as a separate crime.

"Concealment of identity" is merely a statutory provision which allows for the enhancement of the penalty of the underlying crime. *Schroeder v. State,* 96 Wis.2d 1, 7, 291 N.W.2d 460 (1980); *Vogel v. State, supra* at 395. We accordingly vacate the judgment of conviction for concealing identity and vacate both sentences, and remand to the trial court for resentencing based on the violation of sec. 943.32(2), Stats., under circumstances where the armed robbery was committed while his appearance was concealed by a wig, in violation of sec. 946.-62. That judgment, as modified and remanded for resentencing in accordance with this opinion, is affirmed.

The facts show that the Beloit State Bank was robbed on December 20, 1977, by two men, one of whom was armed with a knife. The armed man, Ezell McClellan, turned himself in and pleaded guilty to the robbery. At the time McClellan was first taken into custody, he gave the police a statement implicating the defendant, Samuel Robinson, of being the other man. Robinson was subsequently charged, tried, and found guilty.

Two bank employees and a bank customer were witnesses to the robbery. All three of these witnesses made a positive identification of Robinson as the second rob-

ber.. One of the bank employees stated she had made a careful and studied observation of the robbers as she had been taught to do. Neither she nor any of the other witnesses had any doubt that Robinson was one of the participants in the bank robbery. These three witnesses all testified that, at the time of the robbery, Robinson had long, stringy hair.

One of the witnesses for the prosecution was Pamela Hill, McClellan's sister. She testified that Robinson usually wore his hair in an Afro style and had so worn it at about noon on the day of the robbery. She also testified that McClellan and Robinson came to her home at about 4:30 p.m. on December 20, 1977—about twenty minutes after the robbery occurred. She said that at that time his hair was long, extending to the bottom of his neck. She acknowledged that there were wigs, with the hair long and stringy, in the house. She stated on direct examination that neither Robinson nor McClellan showed her a bag with money in it. At about this point in the proceedings, the prosecution, having demonstrated that Pamela Hill was a reluctant and hostile witness, was allowed to read her earlier statement into the record. This statement incriminated both McClellan and Robinson in the bank robbery.

On cross-examination, Robinson's own counsel elicited the statement from Pamela Hill that the earlier statement given to the police was correct and that the only correction to be made in it was that she was not given $30 of the robbery proceeds. It is thus apparent that Robinson's counsel specifically elicited the information from Pamela Hill that Robinson acknowledged to her his participation in the robbery.

The state also introduced a statement which McClellan, who had pleaded guilty, gave to the police. This statement identified Robinson as his partner in the crime.

McClellan took the stand and was sworn; however, he denied at trial any recollection about Robinson's involvement in the bank robbery other than acknowledging that he had been with Robinson a few hours earlier. He admitted that he had gone into the bank with an accomplice, but he could not recall whether or not it was Robinson. He said he was under the influence of alcohol and LSD at the time and at the time of giving a statement. He acknowledged, however, that the signatures on the statement appeared to be his. After he concluded that McClellan's loss of memory was not in good faith, the trial judge permitted the statement to be put into evidence as substantive proof of Robinson's participation in the crime. He stated:

"I have ruled that the District Attorney may properly proceed on the basis that the Court in the exercise of judicial discretion has a reasonable basis to believe that the testimony of Mr. McClellan as to his total lack of recall may not be truthful."

In doing so, the trial judge relied on this court's decision in *State v. Lenarchick,* 74 Wis.2d 425, 247 N.W.2d 80 (1976), an opinion which permits the introduction of a prior statement when the witness before the court displays a selective loss of memory. The trial judge then determined in his discretion that the claim of lack of recollection on the part of McClellan did not appear to be truthful and, because McClellan's testimony reveals that he could recall at least a part of the incidents concerned with the bank robbery—such as the entering of the bank—that his lack of recollection, *i.e.,* in respect to who his co-participant was, was selective. His reliance upon *Lenarchick* as the reason for admitting the evidence demonstrates that it was McClellan's selective recall that impelled the court to exercise its discretion to admit the statement which fully implicated Robinson.

It is apparent that if these statements were believed by the jury—as indeed they were—and they were properly admitted into evidence—and we conclude they were —the evidence was sufficient to show that Robinson had disguised his hairdo; and from Pamela Hill's description and testimony, it was reasonable for the jury to infer that he was wearing a wig and that he was the participant in the crime. Robinson took the stand and admitted being with McClellan at about noon on the day of the crime; and he admitted to having been with McClellan in Chicago shortly after the crime, although he denied participation in it. Furthermore, the evidence was undisputed that Robinson was positively identified by the only eye witnesses.

On the appeal to the court of appeals, the defendant's argument was that the statements of Pamela Hill and McClellan could not be used as substantive evidence but could only be used for impeachment. On this review, however, in accordance with the decision of the court of appeals and with this court's decision in *Vogel v. State,* 96 Wis.2d 372, 291 N.W.2d 838 (1980), the defendant acknowledges that a witness' prior inconsistent statement may be used as substantive evidence. The objection to both the Hill statement and the McClellan statement on that ground has been abandoned in the proceedings before this court. Because we hold that both statements were properly admissible, the matters recited therein were properly before the jury as substantive evidence of Robinson's guilt.

In the court of appeals, Robinson did not raise the confrontation question in respect to McClellan's statement. That issue was raised *sua sponte* by the court of appeals, in disregard of the trial court's reasons for permitting McClellan's statement to come in. It concluded that the right of cross-examination was denied by Mc-

Clellan's total lack of recall. It accordingly held that Robinson's right of confrontation had been violated and that the error was not harmless. It ordered a new trial.

We conclude that the court of appeals incorrectly analyzed the confrontation question, which it posed *sua sponte*. We need not again restate the principles of confrontation which have been so recently examined and reiterated by this court in *Lenarchick, supra; Virgil v. State,* 84 Wis.2d 166, 267 N.W.2d 852 (1978); *Olson v. State,* 69 Wis.2d 605, 230 N.W.2d 634 (1975); and *Hagenkord v. State,* 100 Wis.2d 452, 302 N.W.2d 421 (1981). By way of summary, however, we pointed out that the due process elements of confrontation are satisfied when the declarant is present and subject to cross-examination. In those cases, however, we recognized that the mere fact that a declarant is physically present and, in a technical sense, subject to cross-examination may not satisfy the constitutional right of confrontation in circumstances where the defendant refuses to testify. Where a witness avails himself of his fifth amendment rights, confrontation is denied. *See Douglas v. Alabama,* 380 U.S. 415 (1965). But the holding of *Lenarchick* was that, where the witness was selective in her recall in respect to an earlier statement, cross-examination was not *ipso facto* denied to the extent that the confrontation clause was violated.

We pointed out in *Pohl v. State,* 96 Wis.2d 290, 306, 291 N.W.2d 554 (1980):

"While this court has held that a defendant is entitled to a meaningful right of cross-examination, we have refused to rule that a witness' claimed inability to recall making a statement is a denial of 'full and effective' or 'meaningful' cross-examination."

*Vogel v. State, supra,* 96 Wis.2d at 390, also pointed out that neither this court nor the United States Supreme Court:

". . . has held that a witness' claim of a lack of recollection concerning his out-of-court statement prevents a meaningful confrontation such as to implicate a defendant's right to confront the witness against him."

As with the witnesses in *Vogel* and *Lenarchick*, McClellan's recollection was selective. He remembered that Robinson had been with him before the robbery, but stated that Robinson had left his company earlier. He stated that he remembered going into the bank for the purpose of committing the robbery, and he remembered that he had an accomplice, but he could not remember who it was. It is noteworthy that what McClellan remembered selectively was in substantiation of what the defendant Robinson asserted. He remembered only those facts that supported Robinson's claim of innocence.

It is indeed true that McClellan denied all knowledge or recollection of giving the police the statement that implicated Robinson. Because of this claimed total lack of recall in respect to the statement, Robinson's counsel claims there could be no cross-examination, and no cross-examination was attempted at trial. As we view the record, however, defense counsel wisely refrained from attempting any cross-examination. The direct testimony of McClellan was that he remembered that Robinson had left his company before the robbery. He denied any independent recollection that Robinson was with him at the time of the robbery, and he denied any recollection of giving the statement which incriminated Robinson. A cross-examination of McClellan under these circumstances could only have been deleterious to the defendant's position. It showed wisdom and good strategy to refrain from cross-examination. What could he have attempted to prove on cross-examination that could have been more favorable to Robinson? Every utterance by McClellan given at the trial which had anything to do with Robinson was in Robinson's favor; and, in respect

to the damaging information in the statement, McClellan denied any recollection whatsoever.

Defense counsel at trial wisely exercised his discretion not to cross-examine. The wisdom of that discretion does not appear to be properly appreciated by the public defender, who asserted the confrontation question only on review to this court and only after the court of appeals *sua sponte* ruled favorably to his client on that question. None of the facts which the court of appeals claimed could have been elicited on cross-examination would have been in Robinson's favor. They could only have tended to implicate Robinson further.

We also conclude that the court of appeals inappropriately overlooked the trial judge's exercise of discretion in determining that McClellan's asserted lack of recall was not truthful. Rather than giving deference to that trial court's determination, the court of appeals chose to accept at face value McClellan's assertion that he had no recall whatsoever. We conclude that this was contrary to the facts of record and was clearly erroneous.

As we view this case from the record and in light of the findings of the trial court, McClellan was physically present, took the oath, and was available for cross-examination. His lack of recall was not total. He remembered only those facts which tended to exculpate Robinson. Although cross-examination could have proceeded at the option of defense counsel, he wisely chose not to cross-examine. As was pointed out in the state's brief on this review, the hazards of reckless cross-examination were demonstrated in the course of the testimony of the earlier witness, Pamela Hill. The direct examination of Pamela Hill by the prosecutor failed to elicit from her the fact that Robinson at 4:30 p.m. on the day of the robbery admitted his involvement in the robbery. On cross-examination, however, she specifically stated, in response to defense counsel's questions, that her prior

out-of-court statement, in which she stated that Robinson had acknowledged his guilt, was correct. In view of the fact that the defense counsel had so recently been taught an object lesson in cross-examination, it was certainly the wise exercise of trial-court strategy to refrain from examining McClellan.

Accordingly, we hold that Robinson's right to confront a witness against him was not violated. Here, the witness McClellan was physically produced in court and took the oath. In the exercise of its discretion, the trial court concluded, relying on *Lenarchick,* that the loss-of-memory claim was not truthful. Consequently, it allowed the prior statement of McClellan to be read to the jury. The record itself shows that the memory loss was selective. Meaningful cross-examination could have ensued; but had cross-examination been pursued, it might well have tended to undermine the in-court statements given by McClellan which exculpated the defendant. The right to meaningful cross-examination is not to be equated with a successful cross-examination which tends to support the cross-examiner's case. Again, we confront a situation where, because we find the loss of memory to be selective, we are able to find that the confrontation clause was satisfied, because there could have been meaningful cross-examination. In so holding we are cognizant of the statement which appears in *United States v. Cuyler,* 548 F.2d 460, 462 (3rd Cir. 1977), which relied upon the concurring opinion of Justice Harlan in *California v. Green,* 399 U.S. 149 (1970). Therein the court said:

"We recognize, of course, that a witness whose prior statement is to be used must not only be produced but must also be sworn and made available for cross-examination. A witness who refuses to be sworn or to testify at all or one who, having been sworn, declines to testi-

fy on Fifth Amendment grounds, has not been thus made available for cross-examination. But if he has been sworn and made available the fact that he suffers or feigns a loss of memory does not lessen the fact that the defendant has been confronted with him and presented with the opportunity to cross-examine him to the extent possible, which is all that the Sixth Amendment requires."

Because the trial court found McClellan's loss of memory to be selective, we are not obliged in this case to reach the conclusion of the California court in *Cuyler;* but, because the due process analysis of Justice Harlan in *California v. Green* so well explains the essentials of the right of confrontation, in an appropriate case we might well be persuaded to follow its reasoning. *See Lenarchick, supra* at 438 *et seq., discussing California v. Green.* Under that analysis, where a defendant is physically present and makes himself available for cross-examination, there is no affront to the confrontation clause of the sixth amendment. Only when a physically available witness refuses to be sworn or invokes the fifth amendment would the confrontation clause *ipso facto* be invoked.

Accordingly, we conclude that the evidence was sufficient to prove that Robinson robbed the Beloit State Bank on December 20, 1977, and that the statements of both Pamela Hill and Ezell McClellan were properly admitted for the purpose of proving the matters asserted therein. These statements, together with the eye-witness identifications of Robinson and the descriptions of his garb at the time of the robbery provided evidence by which the jury could conclude beyond a reasonable doubt not only that he participated in the robbery but that his appearance was concealed by a wig, in violation of sec. 946.62, Stats.

The latter statutory violation, counsel on this appeal asserts, should not have been charged as a separate crime. Moreover, counsel for the state acknowledges that the trial court erred by imposing separate sentences for armed robbery and concealing identity. The state acknowledges that sec. 946.62, Stats., "concealing identity," does not define an independent substantive offense in itself but rather creates an aggravated form of another crime when charged in conjunction with that other crime. We conclude that this concession is appropriate and compelled by our previous cases.

In *Haldane v. State,* 85 Wis.2d 182, 270 N.W.2d 75 (1978), this court indicated that concealing identity is not a separate substantive crime but an aggravating factor of an underlying crime. If there were any doubts whatsoever of the intent of *Haldane,* the issue was resolved in *Schroeder v. State,* 96 Wis.2d 1, 291 N.W.2d 460 (1980). Therein we pointed out that sec. 946.62, Stats., did not set forth a separate and independent offense. We said that statute:

". . . does not create a substantive offense by itself, [but] it does create a substantive offense when charged in conjunction with an underlying crime. Thus, as we said in *Haldane,* a conviction for violating secs. 943.32 (1)(b) and (2) [armed robbery] and 946.62 [concealing identity] is not a conviction of two separate crimes but only the one crime of armed and masked robbery. It is this offense which the defendant in this case was found to have committed as a party to a crime. The fact that two verdicts of guilty were returned for [the one count charging violations of both statutes] does not mean the defendant was convicted of two crimes . .. . The second verdict . . . only found an additional aggravating factor." *Schroeder, supra* at 7.

This rationale was reiterated in *Vogel v. State, supra* at 395.

Although the error of sentencing separately is pointed out by Robinson's counsel and conceded by the state, the method of rectifying this error is disputed by the parties. The attorney general recommends that this court modify the sentence, in accordance with *Schroeder* and *Vogel,* by combining the ten-year term for armed robbery and the two-and-one-half-year term for concealing identity, thus affirming a modified sentence of twelve and one-half years. The defendant takes the position that, if the conviction is affirmed, the case should be remanded to the trial court for the imposition of a single sentence.

We elect the option proposed by the defendant. Although *Vogel, supra,* and *Olson v. State,* 69 Wis.2d 605, 230 N.W.2d 634 (1975), lend support to the attorney general's proposal,[2] the outcome of this issue is

---

[2] In *Vogel,* the defendant was charged by information which, as in this case, improperly showed armed robbery and concealing identity as separate counts. The jury returned guilty verdicts on each count, and the defendant was given consecutive eight and two-year sentences for the respective violations. While this court in *Vogel* ruled that violation of sec. 946.62, Stats., should not have been charged as a separate crime, it did not re-evaluate the total term of sentence of ten years, although it implicitly recognized that it should have been imposed as a single unified sentence, rather than as consecutive sentences for two crimes.

*Olson, supra,* involved a repeater statute. There the defendant was sentenced to four years for the delivery of a controlled substance and separately to six years for being a repeater. This court construed that the repeater statute there did not constitute a separate offense and, therefore, did not warrant an independent sentence. It noted, however, that, where a trial court improperly imposes an additional sentence under the general repeater statute and the trial court has indicated what sentence is being imposed for the repeater status, sec. 973.12(2), Stats., provides that the combined terms are to be construed as a single sentence. Accordingly, in *Olson,* this court applied the logic of sec. 973.12(2) to combine the two concurrent sentences of four and six years into a single sentence to carry out the clearly enunciated sentencing intent of the trial court.

controlled by our recent decision in *State v. Upchurch,* 101 Wis.2d 329, 305 N.W.2d 57 (1981).

In *Upchurch* we held, *inter alia,* that because a violation of the "repeater" statute, sec. 939.62, Stats., does not constitute a separate offense, the imposition by the trial court of two separate consecutive sentences, one for the underlying crime and one for the repeater, violated double jeopardy because in reality two sentences were being imposed for the same crime. We refused on appellate review to modify those two sentences into a single one, and instead remanded the case to the trial court for resentencing under the proper law. The reason was that we held *Olson, supra,* to be erroneous, and we overruled it, insofar as it interpreted sec. 973.12 (2), Stats., to authorize an appellate court to "condense" two sentences into one where one of the two sentences was improperly imposed because the underlying conviction was for a non-existent crime. In *Upchurch* we re-interpreted sec. 973.12(2), Stats., as applicable only where the trial court has imposed one sentence— not, as in the present case, two. We held that, "The terms of that statute do not authorize this court to treat as harmless error two separate sentences ordered on the basis of the commission of one offense." (p. 335.)

Accordingly, rather than attempting to infer at the appellate level what sentence the trial court would have imposed had it proceeded on the proper assumption that concealing identity aggravates armed robbery but does not stand as a separate substantive offense, we conclude that the trial court is the proper court to resentence the defendant under a correct application of the law. We therefore vacate the judgment of conviction for concealing identity, vacate both sentences as imposed, and remand to the trial court for resentencing on the conviction of armed robbery, under circumstances where identity was concealed.

The defendant Robinson has filed a number of *pro se* briefs. These briefs allege matters which cannot appropriately be dealt with on the record before us. They include, among numerous other allegations, improper treatment as a prisoner, violation of the right to counsel following arrest, conviction based on evidence pursuant to an unlawful arrest lacking probable cause, the holding of an improper and suggestive lineup, admission of photographic evidence that should have been suppressed, violation of the right to a fair trial, and violation of the right to a change of venue. It is also asserted that an improper prosecutorial role was played by the trial judge.

Without passing on the sufficiency of any of these allegations, it is apparent that the record before this court does not place them in such a posture that we can appropriately dispose of them. Nor were any of these issues addressed by the court of appeals. It would appear that, to the extent that any of these issues have merit, they can only be raised in collateral proceedings. We have examined all of the *pro se* briefs carefully and have concluded that the grievances addressed therein by Robinson cannot be considered on this review.

We accordingly conclude that the evidence admitted at trial was sufficient for the jury to find beyond a reasonable doubt that the defendant Robinson committed an armed robbery, in violation of sec. 943.32(2), Stats., and that the robbery was committed while Robinson's identity was concealed by a wig, in violation of sec. 946.62; that the prior inconsistent statement of the co-criminal McClellan was appropriately admitted into evidence; and that the constitutionally secured right of confrontation was not violated thereby. We also conclude that the trial court erred when it sentenced Robinson separately for the crime of armed robbery and for the "crime" of doing so while his identity was concealed. We

therefore remand the cause to the trial court for re-sentencing not inconsistent with this opinion.

*By the Court.*—Decision of the Court of Appeals is reversed, and sentences imposed by the trial court are vacated, as is the judgment of conviction for concealing identity; judgment of conviction of armed robbery is affirmed, under circumstances wherein the defendant was concealing his identity, and cause is remanded to the trial court for resentencing.